UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY R. QUAIR, SR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VENTO, et al.,<br><br>　　　　Defendants. | Case No.: 1:14-cv-01616-BAM (PC)<br><br>ORDER GRANTING REQUEST TO ACCEPT EXHIBITS TO COMPLAINT<br>(ECF No. 8)<br><br>SCREENING ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Sammy R. Quair, Sr., ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on October 16, 2014, via this Court's e-service program. (ECF No. 1.) On December 11, 2014, Plaintiff filed a request that the Court accept the cited exhibits to his complaint, which were not filed with his complaint due to e-service page limitations. Plaintiff explains that he was one of the first individuals to utilize the e-service program and his complaint exceeded the page limits because of the number of defendants and violations at issue. Plaintiff requests that the Court grant his request to exceed the page limits. (ECF No. 8.) For good cause shown, Plaintiff's request is GRANTED.

///

///

1

**I.      Screening Requirement and Standard**

Plaintiff's complaint, filed on October 16, 2014, is currently before the Court for screening. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Corcoran.  Plaintiff's complaint concerns events that occurred while he was a pretrial detainee in the Kings County Jail.  Plaintiff names the following defendants:  (1) Commander Vento; (2) Sergeant Garcia; (3) Senior Deputy Day; (4) Senior Deputy Thayer; (5) Senior Deputy Little; (6) Deputy Uhlery; (7) Deputy Hernandez; (8)

1 Deputy Santos; and (9) unidentified defendants.  Plaintiff is suing defendants in their individual and
2 official capacities.

3       Claim One

4       Plaintiff alleges that Kings County Jail officials violated his state and federal rights.  On April
5 7, 2013, Plaintiff was arrested and detained in the Hanford Kings County Jail.  On April 24, 2013,
6 Plaintiff asked Sheriff's Deputy Chism for a grievance regarding jail overcrowding and his conditions
7 of confinement.  Plaintiff completed the grievance and submitted it back to Deputy Chism.  Deputy
8 Chism advised Plaintiff that the grievance would be forwarded to Defendant Day.  Defendant Day
9 answered the grievance.  Plaintiff responded to the second level of review by resubmitting the
10 grievance to Deputy Chism.  Deputy Chism advised that she would resubmit the grievance to
11 Defendant Day for forwarding to Defendant Vento.  Defendant Day also advised that the grievance
12 would be forwarded to Defendant Vento.  Plaintiff contends that Defendant Day had a strange attitude,
13 which raised red flags in his mind.  Plaintiff alleges that the "due process" time restraints had been
14 violated.  Plaintiff reportedly informed Deputy Chism about the grievance time restraints violation.
15 Deputy Chism appeared to be troubled.  Plaintiff questions whether his grievance was thrown away.
16 All defendants, except Defendants Day and Vento, were looking for the grievance.  Deputy Chism
17 appeared to be disappointed that a grievance with her name and signature came up missing.  Deputy
18 Chism told Plaintiff that if he gave her any more grievances, then they would be properly handled.  At
19 some point, Defendant Day stated, "Even if you did complain, no one is going to listen."  (ECF No. 1,
20 p. 8.)  Plaintiff asserts that no one is going to listen to his grievances if they are being mishandled.

21       In Plaintiff's May 31, 2013 grievance response, Sergeant Cortez required Plaintiff to produce a
22 court order for pro per privileges.

23       In a grievance dated June 12, 2013, Defendant Hernandez retaliated against Plaintiff by
24 denying him legal envelopes when she had some in her hand.  Defendant Santos also denied Plaintiff
25 legal envelopes.  Defendant Thayer ordered Defendant Hernandez not to provide Plaintiff with legal
26 envelopes.  Defendant Hernandez intercepted Sergeant Flores' request slip and answered it by forging
27 Sergeant Flores' name.

28

Plaintiff obtained a court order for pro per privileges and incentives. Plaintiff provided Sergeant Cortez with the court order, but Defendant Vento denied Plaintiff pro per incentives and privileges. Plaintiff alleges that he was retaliated against by defendants, which caused his actions (2:11-cv-02293-CKD and 2:11-cv-02294-KJN) to be dismissed.

Plaintiff further alleges that Defendant Uhlery acted unethically.

Claim Two

In Claim Two, Plaintiff complains of what he describes as a violent, gladiator-type scenario in an overcrowded jail. Defendants Little and Garcia, along with a doe defendant responsible for watching the video camera screens, were involved. Plaintiff alleges that various security measures were not met and approximately five different fights occurred within a 15-20 minute period while two inmates were under investigation (Inmates J.D. and West) and one of those two allegedly had been assaulted by Defendant Garcia. Plaintiff does not know the inmates involved in the gladiator violence, but can identify them in a video.

Plaintiff asserts that Defendant Garcia was on leave for physically assaulting inmates, but he does not remember for sure. On the date of the gladiator fights, Plaintiff remembers Defendants Garcia, Little, Thayer and Hernandez working that day.

Plaintiff asserts that one day he was walking in the hall back to his pod. Plaintiff was passing Defendant Garcia, who was seated in a roll-around chair. Defendant Garcia had just come back from leave for allegedly assaulting 4-6 inmates. Plaintiff states that he was always cautious of Defendant Garcia. Passing Defendant Garcia, Plaintiff asked if he could have his grievance back because the time restraints were up. They locked eyes and Plaintiff did not even know Defendant Garcia handed him an already answered grievance pertaining to the jail adopting sample grievance and request forms. When Defendant Garcia gave Plaintiff the grievance, he said, "Go ahead, keep on filing these grievances and watch what happens." Plaintiff thought about Defendant Garcia's threat for a few days and decided to ask Deputy Santos for a grievance to file against Defendant Garcia for threatening him. Deputy Santos said, "Mr. Quair, you cannot grieve that." Plaintiff alleges that this violated his First Amendment rights. Plaintiff was then moved from A-96 to A-95.

4

1   Inmates J.D. and West were put on lockdown for investigation of threatening other inmates.
2   During the 3-4 days of their lock down, Inmates J.D. and West made more enemies, yelling and
3   cussing through the door with other inmates.
4   Plaintiff asserts that he has been a validated gang member since 1995 and he witnessed
5   deceptive moves by guards. Plaintiff believes that Inmates J.D. and West were preparing for war with
6   everyone else in the day room. When Inmates J.D. and West were released, Inmate West fought with
7   one of the inmates living in the day room. Defendant Garcia and his team did not enter. After the
8   fight, Inmate West attacked and violently assaulted another inmate in the restroom. Plaintiff's
9   neighbor's door opened and he ran downstairs to attack Inmate West. The attack on Inmate West was
10  so hard, that blood splashed all over the walls and cell doors. After 15-20 minutes of fighting,
11  Defendants Garcia, Hernandez, Little, and Thayer came into the pod. Plaintiff alleges that the guards
12  were watching in the hallways through the mirrored windows and came into the room calm and
13  collected. After the fighting, Sergeant Garcia did not place the pod on mandatory lock down
14  according to policy and procedure.
15  Following the violence, Plaintiff was to attend day room. Fortunately, nothing happened to
16  Plaintiff. Inmate Wolff was on the yard when the gladiator violence happened. Inmate Wolff came in
17  from the yard after the fights and said, "I was on the yard looking into the hallways and seen [sic] a
18  bunch of cops looking into our pod through the one way mirrored windows for a long time." Plaintiff
19  responded, "I know they set up our pod for gladiator fights." After Plaintiff went to the day room, he
20  told everyone to stop fighting because the guards were setting them up for gladiator fights. Plaintiff
21  was never assaulted as a result of the gladiator fight.
22  As Plaintiff had no problem with any of the inmates living in the day room or his section of the
23  cell, Defendant Garcia decided to move Plaintiff to a new section of inmates. Plaintiff anticipates that
24  he will be a victim of "strategized instigating a force of violence amongst inmates." (ECF No. 1, p.
25  19.)
26  Plaintiff further alleges that one night in his new cell, Mrs. Herera, a non-party, did a post
27  security check at about 10:45 p.m. After she walked past, Defendant Day walked by and stood in
28  front of Plaintiff's door looking in at him. Plaintiff saw Defendant Day staring at him with a weird

5

blank stare. Plaintiff stared back and Defendant Day turned around and walked off. Plaintiff became scared because Defendant Day made it a point to walk upstairs, stop at Plaintiff's cell, look at him crazy and then leave. Plaintiff contends that there was no reason for Defendant Day to do so because Mrs. Herera did the post security check.

Plaintiff asked Defendant Hernandez if he could have his legal envelopes. At about 12:45 a.m., Defendant Hernandez gave Valencia legal envelopes and then told Plaintiff that there were none. Plaintiff asserts that he is on appeal in his criminal case and he will be returning to the Kings County Jail for court. If he has to deal with any more retaliation, he is "coming after the Sheriff Mr. Robinson." (ECF No. 1, p. 20.) Plaintiff asserts that he asked prion officials to stop Defendants Hernandez and Day from harassing and retaliating against Plaintiff.

### III. Deficiencies of Complaint

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18 and fails to state a cognizable claim. As he is proceeding pro se, Plaintiff will be given leave to amend to cure these deficiencies. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims. If Plaintiff elects to amend his complaint, he should amend only those claims that he believes, in good faith, state a cognizable claim for relief.

#### A. Pleading Standards

##### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557.

Here, Plaintiff's complaint is not a short and plain statement of his claims. Plaintiff's complaint is more than 20 pages in length and involves multiple defendants in unrelated claims.

1  Plaintiff's complaint is disjointed, confusing and lacks basic facts, including what happened, who was
2  involved and the constitutional right that he claims was violated.  Plaintiff will be given leave to cure
3  these deficiencies.

### 2.  Federal Rule of Civil Procedure 18

Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U .S.C. § 1915(g)).

Here, Plaintiff attempts to bring suit against multiple defendants for different incidents at different times.  For example, Plaintiff complains about the processing of his grievances by certain defendants, while simultaneously complaining about the failure to protect him from harm.  If Plaintiff chooses to file an amended complaint and it fails to comply with Rule 18(a), all unrelated claims will be subject to dismissal.

### B.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

If Plaintiff elects to amend his complaint, he must allege what each individual defendant did or did not do that resulted in a violation of his constitutional rights.

### 3. Official Capacity

Plaintiff attempts to bring suit against defendants in their official capacities.

"An official capacity suit against a municipal officer is equivalent to a suit against the entity." Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff's Dep't, 533 F.3d 780, 799 (9th Cir.2008) (citing Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). In this instance, Plaintiff has not named the county as a defendant.

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell, 436 U.S. at 691; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Webb v. Sloan, 330 F.3d 1158, 1163-64 (9th Cir. 2003); Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002). Rather, a local government unit may only be held liable if it inflicts the injury complained of. Monell, 436 U.S. at 694; Gibson, 290 F.3d at 1185.

Generally, a claim against a local government unit for municipal or county liability requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007); City of Canton, Ohio, v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Alternatively, and more difficult to prove, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. Gibson, 290 F.3d at 1186. Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Id. Deliberate indifference requires a showing "that the municipality was on actual or constructive notice that its omissions would likely result in a constitutional violation." Id.

///

///

8

### 4. Doe Defendants

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for the John Does.

### 5. Supervisory Liability

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citation and quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### C. Legal Standards

#### 1. Grievances

In Claim One, Plaintiff appears to complain about a lost grievance and the responses to his grievances by various prison officials. To the extent Plaintiff complains about the review and processing of his inmate complaints, Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

#### 2. Access to Courts

In Claims One and Two, Plaintiff appears to assert that he was denied access to the courts by prison officials' failure to afford him pro se privileges and to provide him with legal envelopes. Plaintiff claims that this failure resulted in the dismissal of his two cases: 2:11-cv-02293-CKD and 2:11-cv-02294-KJN.

Although inmates have a fundamental constitutional right of access to the courts, Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009), to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice with respect to contemplated or existing litigation," Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348) (internal quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012); Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

Plaintiff claims prison officials' interference resulted in dismissal of his cases, identified as 2:11-cv-02293-CKD and 2:11-cv-02294-KJN. However, a review of court records reveals that these cases have not been dismissed.[1] Rather, they have been consolidated into a single action, 2:11-cv-2293 JAM CKD P, and this consolidated action is open and active. Therefore, Plaintiff cannot state a cognizable claim for denial of access to the courts in the absence of any actual injury.

### 3. Retaliation

In Claims One and Two, Plaintiff asserts that defendants are retaliating against him.

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir.2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

---

[1] The Court may take judicial notice of court records in another case. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995).

As a basic matter, Plaintiff fails to adequately allege any purportedly adverse actions taken against him because of any protected conduct. Plaintiff's conclusory allegations are not sufficient. Moreover, and as discussed below, Plaintiff's allegations of threats against him are not actionable.

### 4. Fourteenth Amendment-Failure to Protect

Plaintiff alleges that inmates engaged in gladiator-type fights. While the claims of pretrial detainees regarding their conditions of confinement are governed by the Fourteenth Amendment rather than the Eighth Amendment, the same legal standards apply. Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010) (pre-trial detainee's failure-to-protect claim was governed by the same "deliberate indifference" standard as applies under the Eighth Amendment to convicted prisoners); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment ... we apply the same standards.")

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832–33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir.2005), and the failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a

substantial risk of serious harm to the plaintiff, e.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

In this instance, Plaintiff alleges that inmates engaged in gladiator type fights, but admits that he was not a victim of any fight or attack. Therefore, Plaintiff cannot state a claim based on the failure to protect him from harm.

### 5. Conspiracy

Plaintiff's conclusory allegations concerning a conspiracy are not sufficient. A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 20 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

### 6. Harassment

To the extent Plaintiff asserts that he was subjected to verbal harassment or abuse, he cannot state a cognizable claim. Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

### IV. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18 and fails to state a cognizable claim. The Court will grant Plaintiff an opportunity to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be

[sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

      Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff's complaint must comply with the joinder requirements of Rule 18, and any amended complaint that meets such requirements should not exceed twenty-five pages.

      Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. <u>Lacey</u>, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

      Based on the foregoing, it is HEREBY ORDERED that:

    1.    The Clerk's Office shall send Plaintiff a complaint form;

    2.    Plaintiff's complaint is dismissed with leave to amend;

    3.    Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and

    4.    <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.</u>

IT IS SO ORDERED.

    Dated:   **June 5, 2015**           /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE